**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
J.L., an infant under the age of sixteen (16) years,
and COLLEEN O'FLAHERTY, for herself and as
Next Friend of J.L.,

                       **DECISION AND ORDER**
        Plaintiffs,            14-cv-4565 (ADS)(SIL)

      -against-


EASTERN SUFFOLK BOCES, SACHEM
CENTRAL SCHOOL DISTRICT BOARD OF
EDUCATION, MATTHEW MATERA,
individually and in the capacity of Principal of
Jefferson Academic Center; HOLLY RAUBER,
individually and in the capacity of Assistant
Principal of Jefferson Academic Center,
ALEXANDER GOLIK, individually and in the
capacity of employee of Jefferson Academic Center,
and DOES 1-10, individually and in their capacities
as employees of Jefferson Academic Center,
Sachem Central School District, and/or Eastern
Suffolk BOCES,

         Defendants.
---------------------------------------------------------X


<u>**APPEARANCES:**</u>

**The Law Offices of Jonathan E. Neuman, Esq.**
*Attorney for the Plaintiffs*
176-25 Union Turnpike, Suite 230
Fresh Meadows, NY 11366
        By: Jonathan Ellery Neuman, Esq., Of Counsel

**Devitt Spellman Barrett, LLP**
*Attorneys for the Defendant Sachem Central School District*
50 Route 111
Smithtown, NY 11788
        By: Joshua S Shteierman, Esq., Of Counsel

**Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis**
*Attorneys for the Defendants Eastern Suffolk Boces, Matthew Matera, Holly Rauber, and Alexander Golik*
333 Earle Ovington Blvd., Suite 505
Uniondale, NY 11553
     By: Laura A. Endrizzi, Esq.
       Francis X. Schroeder, Esq., Of Counsel

**SPATT, District Judge**.

This case arises from alleged assaults committed by a teacher and students at Jefferson Academic Center ("Jefferson") and Islip Academic Center ("Islip") against the Plaintiff J.L., a fourteen year-old student.

On July 30, 2014, the Plaintiffs J.L. and Colleen O'Flaherty ("O'Flaherty"), for herself and as Next Friend of J.L., (collectively, the "Plaintiffs") commenced this action against Eastern Suffolk BOCES ("BOCES"), Sachem Central School District (the "District"), Matthew Matera ("Matera"), individually and in the capacity of Principal of Jefferson, Holly Rauber ("Rauber"), individually and in the capacity of Assistant Principal of Jefferson, Alexander Golik ("Golik"), individually and in the capacity of employee of Jefferson, and Does 1-10, individually and in their capacities of employees of Jefferson, the District, and/or BOCES (collectively, the "Defendants").

The Plaintiffs assert six causes of action against the Defendants: (1) violation of the Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983, 1985, and 1986; (2) violation of New York Education Law § 10, *et seq*, ("N.Y. Educ. Law"); (3) assault and battery; (4) intentional infliction of emotional distress; (5) negligence; and (6) negligent infliction of emotional distress.

Presently before the Court is a motion by the District pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to dismiss the Plaintiffs' claims as against it. For the reasons set forth below, the Court grants, in part, and denies, in part, the District's motion.

## I. BACKGROUND

Unless otherwise stated, the following facts are taken from the complaint and are construed in the light most favorable to the Plaintiffs.

### A. The Parties

The Plaintiff J.L. is a male infant under the age of sixteen and currently resides in Mastic Beach, New York.

The Plaintiff O'Flaherty is the Plaintiff's mother and also resides in Mastic Beach, New York.

The Defendant BOCES is a public entity and educational cooperative of fifty-one school districts located in Suffolk County. Jefferson and Islip are a part of BOCES.

The Defendant District is a public school district located in Suffolk County. It allegedly placed the Plaintiff J.L. at Jefferson.

The Defendant Golik is a staff member employed by Jefferson and is alleged to have assaulted the Plaintiff J.L. while he was attending Jefferson.

The Defendant Matera is the former principal employed by Jefferson at the time of the alleged assault.

The Defendant Rauber is a former assistant principal employed by Jefferson at the time of the alleged assault.

**B. The Alleged Facts**

**1. The Jefferson Middle School**

When he was four years-old, J.L. was diagnosed with autism and certain mental conditions, including pervasive developmental disorder, mood disorder, oppositional defiant disorder, and attention deficit hyperactivity disorder.

On an unspecified date, the District's Committee on Special Education ("CSE") classified J.L. as a student with special needs due to his mental conditions and placed him at Jefferson. (See Compl. at ¶¶ 16, 18.)  In New York, the team of representatives from the District that develop a child's Individual Education Program ("IEP") is referred to as the Committee on Special Education ("CSE").  See Frank v. Sachem Sch. Dist., No. 14-CV-67 (ADS) (ARL), 2015 WL 500489, at *2 (E.D.N.Y. Feb. 5, 2015) (Spatt, J.).

As a result of its decision to classify J.L. as a special needs student, the District adopted an IEP for J.L.  (See id. at ¶ 19.)  By way of background, the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, et seq. requires a school district to develop an IEP in conjunction with a child's parents.  The IEP is a written document that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives."  K.H. v. New York City Dep't of Educ., No. 12-CV-1680 (ARR), 2014 WL 3866430, at *1 (E.D.N.Y. Aug. 6, 2014) (quoting Honig v. Doe, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)).

The Plaintiffs allege that all of J.L.'s conditions were documented in the IEP and "all of the faculty at Jefferson were or should have been aware of J.L.'s mental health conditions and limitations." (Compl. at ¶ 19.)

Jefferson had a "Behavioral Intervention Room," ("BIR") which was used by Jefferson staff as "an area for a student to safely deescalate, regain control, and prepare to meet expectations to return to his/her educational program." (Id. at ¶ 20.) "Time-out" rooms, such as the BIR, are subject to regulation by 8 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 200.22, which among other things, requires that the rooms contain "[w]all and floor coverings . . . designed to prevent injury to the student." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.22.

**2. The Alleged Assault**

On May 15, 2013, J.L., then an eighth grade student at Jefferson, was having a "difficult morning" and was sent to the office of the Defendant Rauber, the assistant principal of Jefferson. (See Compl. at ¶ 23.) After attempting to calm J.L. down, Rauber sent him to the BIR. (See id.)

When he arrived at the BIR, J.L. covered his head with a coat to "calm himself down." (Id.) The Defendant Golik and an employee, who the complaint identifies as Maria, were in the BIR at that time supervising J.L. Golik and Maria told J.L. to take off his coat. Allegedly, when J.L. refused to remove the coat from his head, Maria "grabbed the coat away from him" and ripped the inside of the coat. (Id. at ¶ 28.)

After Maria took his coat away from him, J.L. stood up and began yelling. In response, Golik allegedly "football tackled J.L. from behind, knocking J.L. to the floor." (Id.) J.L.'s face smacked into the floor and then Golik allegedly "dove on top of J.L. and would not get off . . . [d]espite J.L.'s repeated protestations that he was bleeding[.]" (Id.)

At about 10:15 a.m., following the alleged tackling incident, the Plaintiff O'Flaherty, J.L.'s mother, received a phone call from Rauber.  Rauber informed O'Flaherty of the incident but left out details regarding Golik's actions.  (See id. at ¶ 24.)  Specifically, she did not inform Rauber that Golik had tackled J.L. and instead described J.L.'s injury as a "spontaneous nose bleed."  (Id.)  Rauber also told O'Flaherty that J.L. was refusing to wipe the blood from his face and asked O'Flaherty to speak with J.L.

O'Flaherty spoke with J.L. and successfully calmed him down after she convinced Rauber to allow J.L. to put his coat back on.

Between 12 pm and 12:30 pm on May 15, 2013, the same day, the School Nurse Renee — the complaint does not identify Renee's last name — left a voice mail for O'Flaherty.  In the voicemail, Renee allegedly stated that J.L. "must have had a spontaneous nose bleed because he did not hit it." (Id. at ¶ 26.)  The Plaintiffs allege that Renee was instructed by Rauber to conceal the true nature of J.L.'s injuries.

When J.L. arrived home later that evening, O'Flaherty observed "bruises on his hand and arm" and redness on "half of his face."  (Id. at ¶ 28.)  It also appeared to her that J.L.'s nose was broken.  Concerned, O'Flaherty allegedly left a voicemail with Dr. Hartman, a school psychologist employed by the District, informing him of the incident.  She then brought J.L. to a hospital where he was diagnosed with a nasal contusion.  The complaint does not specify where J.L. was treated, nor who at the hospital examined his injuries.

### 3. The Post-incident Investigation

On May 16, 2013, the day following the incident, O'Flaherty spoke with Rauber again to inform her of J.L.'s injuries.  Rauber allegedly changed her story and now informed O'Flaherty that the injury to J.L.'s nose did not occur spontaneously but was the result of Golik

"tak[ing] down [J.L.] from the side." (<u>Id.</u> at ¶ 31.) Rauber allegedly told O'Flaherty that she would receive a "write-up" of the incident. However, O'Flaherty never received such a document.

On the same day, O'Flaherty again reached out to Dr. Hartman and Susan Tuttle ("Tuttle"), an employee of the District, regarding the incident. The complaint does not specify Tuttle's title or role as an employee at the District. Dr. Hartman allegedly suggested that the District's CSE meet to discuss transferring J.L. from Jefferson to another school. O'Flaherty told Dr. Hartman that a transfer would be unacceptable because there was only one month left in the school year.

On May 17, 2013, O'Flaherty again reached out to Dr. Hartman and Tuttle to inform them that J.L. was refusing to go to school. She also asked Tuttle what training, if any, Golik and Maria, as well as the other staff members at Jefferson, had in working with children that have mental health issues. (<u>Id.</u> at ¶ 33.) Tuttle allegedly responded that she would get back to O'Flaherty after speaking to the Defendant Matera, the principal of Jefferson.

Later on the same day, Tuttle called O'Flaherty back to inform her that the District did not require proof that teachers have a "certification" because it left training requirements to BOCES. She also allegedly stated that the District did not have any information regarding Golik's training or qualifications.

On May 17, 2013, the Defendant Matera called O'Flaherty and told her that Jefferson would perform a full investigation into the incident. Based on Matera's assurance that Golik "would not be permitted to be anywhere near J.L.," J.L. agreed to return to Jefferson for the remainder of the school year. (<u>Id.</u> at ¶ 35.)

On May 20, 2013, O'Flaherty sent an email to Julie Lutz ("Lutz"), the superintendent of BOCES, to ask for information in writing regarding what certifications, if any, Golik had to work with children who had special needs. In response, Lutz sent "some policies and New York regulations" but did not send any information specifically relating to Golik.

On the same day, O'Flaherty received another phone call from Matera. In that conversation, Matera allegedly admitted that "Golik needed additional training, and that next year the staff members would be instructed that they need to take each child's situation and special needs into account when dealing with students." (Id. at ¶ 37.) He further stated that he "was very bothered by the fact that Ms. Maria pulled J.L.'s coat away from J.L. [] because the staff is never supposed to pull an object away from a child." (Id.)

### 4. The Additional Alleged Assaults by Golik

On May 23, 2013, Matera called O'Flaherty to tell her that J.L.'s teacher had again placed J.L. in the BIR because he was not following directions. Matera said that J.L. needed to be restrained because he had, among other things, threatened to injure another teacher and a student. However, Matera allegedly concealed the fact that Golik allegedly approached J.L. in the hall, threatened to put his hands on him, and stood outside of the door of the BIR after J.L. was placed there.

O'Flaherty alleges she later learned from an unspecified source that Golik had assaulted J.L. on other occasions. Specifically, on an unspecified date in late 2012 or early 2013, Golik allegedly "pulled J.L. off of a stage by J.L.'s arm." (Id. at ¶ 39.) She also learned that Golik had threatened to "take J.L. down" on numerous occasions, though the complaint fails to provide any details regarding those alleged incidents.

Following the May 15, 2013 assault, J.L. alleges that his nose is "more sensitive than usual" and bleeds "spontaneously even from a slight change in pressure or temperature."  (Id. at ¶ 40.)  The assaults have also aggravated J.L.'s mental health issues and have made him fearful of future attacks.  As a result, J.L. did not go to school for two weeks following the May 23, 2015 incident.

The assaults suffered by J.L. have also caused O'Flaherty "severe stress and heart palpations" for which she has had to "go on medication."  (Id. at ¶ 48.)  The complaint does not specify what medication has been prescribed for O'Flaherty.

### 5. J.L.'s Transfer to the Islip Academic Center

On an unspecified date in 2013, J.L. began ninth grade at Islip, another school that was part of the BOCES network.  One week prior to starting school, O'Flaherty reached out to an unidentified secretary at Islip to inquire about J.L.'s teacher placement and "paperwork."  Allegedly, when O'Flaherty told the secretary that she was J.L.'s mother, the secretary responded, "We know who he is."  (Id. at ¶ 45.)

During the first few days of the school year, the complaint alleges that "various faculty members and students would get into issues with J.L. . . . in retaliation for the lawsuit that J.L.'s mother had threatened."  (Id. at ¶ 48.)

The complaint further alleges the O'Flaherty complained to an unidentified staff member at Islip about her son being bullied but never received a response from the school.  (Id. at ¶ 49.)

According to the complaint, on October 28, 2013, J.L. was assaulted by a student outside of a classroom at Islip.  (Id. at ¶ 50).  Allegedly, the student punched J.L. in the head, nose, and chest.  Although a teacher was present during the assault, the complaint alleges that the

teacher did nothing to stop it.  Again, the complaint alleges that the teacher failed to act in retaliation for O'Flaherty's impending lawsuit against the school.  As a result of the assault, J.L.'s nose was broken and is now permanently crooked.

On the same day, O'Flaherty allegedly went to the "police" to press charges and was told that "it was customary for the school to call" the police before charges were made.  (Id. at ¶ 52.)  It is not clear which police station O'Flaherty allegedly went to, nor to whom she spoke.

On October 29, 2013, the following day, O'Flaherty had a meeting with the principal of Islip**.**  The complaint does not provide his name.  She asked the principal if the school had investigated her prior complaints that J.L. was being bullied.  Allegedly, the principal responded that the school had investigated the complaint but found that J.L. had in fact not been bullied.  When she asked why the school had not called the police about the alleged assault, the principal apparently responded that the school had discretion to call the police and had decided not to do **so**.

After t**his** incident, J.L. was given a one-on-one aide by Islip to help him feel safer at school.  However, the aid did not improve J.L.'s mental state.  As a result, O'Flaherty decided to move with J.L. to Mastic Point so that J.L. could attend a school in a different school district.

## C. The Procedural History

On July 30, 2014, the Plaintiffs J.L. and O'Flaherty, on behalf of herself and as Next Friend of J.L., filed a complaint against the Defendants BOCES, the District, Matera, Rauber, Golik, and Does 1–10, individually and in their capacities as employees of Jefferson, Sachem, and/or BOCES.

The complaint asserts four claims pursuant to 42 U.S.C. § 1983 against (i) Golik for violating J.L.'s rights under the Fourth Amendment by "utilizing unjustified and unreasonable

force against J.L."; (ii) Golik and BOCES for violating J.L.'s right under the Equal Protection clause of the Fourteenth Amendment because J.L. was "treated differently" by Golik and BOCES; (iii) all of the Defendants for violating J.L. and O'Flaherty's alleged rights under the Due Process Clause by "intentionally interfering in the parent child relationship"; and (iv) the District and BOCES for "failing to maintain adequate policies and conduct adequate training to prevent violation of the constitutional rights of students and parents" and being "deliberately indifferent to the demonstrated propensity of their agents to violate constitutional rights of citizen in the manner that Plaintiffs' rights were violated." (Id. at ¶¶ 64–69.)

The Plaintiffs also assert claims against all of the Defendants pursuant to 42 U.S.C. §§ 1985(3) and 1986 for "conspir[ing] to conceal facts of this from [the] Plaintiffs and neglect[ing] to prevent future violations. (Id. at ¶ 70.)

Finally, the Plaintiffs allege five additional state law claims against: (i) all of the Defendants for violating N.Y. Educ. Law § 10, *et seq.*; (ii) Golik for assault and battery; (iii) all of the Defendants for intentional infliction of emotional distress; (iv) all of the Defendants for negligence; and (v) all of the Defendants for negligent infliction of emotional distress. (Id. at ¶¶ 72–104.) In addition, the Plaintiffs assert that the Defendants BOCES and the District are "jointly and severally liable for all state-based claims under the doctrine of *respondeat superior*." (Id. at ¶ 14.)

On October 2, 2014, the Defendants BOCES, Matera, Rauber, and Golik filed an answer to the complaint.

Presently before the Court is a motion by the District to dismiss all of the claims against it.

## II. DISCUSSION

### A. The Legal Standards

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court generally "'accept[s] all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (quoting Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003)). However, a complaint must plead "enough facts to state a claim to relief that is plausible on its face" to survive a 12(b)(6) motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In particular, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted); Luna v. N. Babylon Teacher's Org., 11 F. Supp. 3d 396, 401 (E.D.N.Y. Apr. 7, 2014) ("Conclusory allegations of legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (citing Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)).

### B. As to the Plaintiffs' Federal Claims Against the District

Although it is somewhat vague, the complaint appears to allege the following federal claims against the District: (i) a claim under 42 U.S.C. § 1983 for violation of the Plaintiffs' constitutional rights under the Fourth Amendment and the Procedural and Substantive Due

Process Clauses of the Fourteenth Amendment; and (ii) a claim under 42 U.S.C. §§ 1985(3) and 1986 for conspiracy to interfere with the Plaintiffs' civil rights.

The Court will, in turn, address the parties' arguments with respect to each claim.

**1. As to the § 1983 Claim**

As noted above, the complaint asserts a claim under 42 U.S.C. § 1983 against the District for violation of the Plaintiffs' constitutional rights under the Fourth Amendment and the Procedural and Substantive Due Process Clauses of the Fourteenth Amendment.

The District asserts that the § 1983 claims against it should be dismissed because (i) the complaint fails to allege a municipal policy or custom as is required under Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny; (ii) the complaint does not sufficiently allege that the Plaintiffs' constitutional rights under the Procedural and Substantive Due Process clause were violated; and (iii) O'Flaherty lacks standing to assert a § 1983 claim. (The Dist. Mem. of Law at 6–15.)

In response, the Plaintiffs assert that the complaint sufficiently asserts a Substantive and Procedural Due Process claim and that O'Flaherty does have standing. (The Pls.' Mem. of Law at 6–8; 10–13.) However, they do not respond to the District's argument that the complaint fails to allege a sufficient municipal policy or custom under Monell.

As is made clear below, the Court agrees that the complaint fails to sufficiently allege a municipal policy or custom and thus fails as a matter of law with regard to the Section 1983 cause of action. Therefore, the Court need not address the parties' other arguments.

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

13

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004). Additionally, "'[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Id. (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)).

However, in Monell, the Supreme Court held that a local government may not be held liable under § 1983 for an "injury inflicted solely by its employees or agents." 436 U.S. at 694, 56 L. Ed. 2d 611. In other words, local government entities "are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). Instead, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." Id. (quoting Monell, 436 U.S., at 691, 98 S.Ct. 2018).

The Second Circuit has stated that there are three ways to show that a school district acted under a municipal policy for purposes of § 1983:

A school district's liability under Monell may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'

Hurdle v. Bd. of Educ. of City of New York, 113 F. App'x 423, 424-25 (2d Cir. 2004) (quoting Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004)).

There is no allegation that the District promulgated an express official policy which violated J.L. or O'Flaherty's constitutional rights.  As such, the Plaintiffs' § 1983 claims cannot be premised on the first theory of liability.

With respect to the third theory of liability — the actions of a 'final policymaker' —, the Second Circuit has stated that an employee is a final policymaker where he or she "has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy."  Rookard v. Health & Hospitals Corp., 710 F.2d 41, 45 (2d Cir. 1983); see also Lopez v. Bay Shore Union Free Sch. Dist., 668 F. Supp. 2d 406, 417 (E.D.N.Y. 2009) (Spatt, J) (same).

Here, the only individuals employees from the District who are named in the complaint are Dr. Hartman, a psychiatrist employed by the District, and Tuttle, an employee of the District. The complaint does not make clear what Tuttle's title is, nor what role she played at the District. Without more, the Court cannot conclude that Tuttle or Dr. Hartman was a policymaker sufficient to impute liability to the District for their alleged actions.

With respect to the second theory — a longstanding practice or custom — , "[a] school district may be held liable for inadequate training, supervision or hiring where the failure to train, hire or supervise amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact."  Bliss v. Putnam Valley Cent. Sch. Dist., No. 7:06-CV-15509 (WWE), 2011 WL 1079944, at *8 (S.D.N.Y. Mar. 24, 2011) (quoting City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); see also Tyrrell v. Seaford Union Free Sch. Dist., 792 F. Supp. 2d 601, 631 (E.D.N.Y. 2011) ("'In limited circumstances, a municipal entity's decision not to train certain employees about their legal duty to avoid

violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983.'") (quoting <u>Connick</u>, 131 S.Ct. at 1359) (alterations omitted).

Here, the complaint alleges that the District should be held liable under an "inadequate training" theory for the acts of Golik, Matera, and Rauber. (Compl. at ¶ 69(a)). However, there are no allegations in the complaint suggesting that the District had authority over the training and supervision of employees at Jefferson.

On the contrary, Golik, Matera, and Rauber, whose actions and omissions form the central basis of the Plaintiffs' § 1983 claims, are alleged to be employees of BOCES, not the District. (<u>Id.</u> at ¶¶ 8–10.) Moreover, when the Plaintiff asked Tuttle, an employee of the District, if the District required teachers to be certified, Tuttle responded, "that [issue] is left up to BOCES." (<u>Id.</u> at ¶ 33.)

The Plaintiff alleges that at this stage of the litigation**,** the Court has "simply no way of knowing" if the District had control over BOCES with respect to hiring and firing and, construing the allegations in the complaint as true, should infer that "there is a controlling agency relationship between Sachem and the other Defendants." (The Pls.' Opp'n Mem. of Law at 6.) The Court disagrees.

As noted**,** the allegations above do not plausibly suggest that the District had any control over the training of teachers and hiring decisions of BOCES or Jefferson. The conclusory allegations that the Defendants "acted in concert and as the agent of one another" are simply not enough to survive a motion to dismiss. <u>TC v. Valley Cent. Sch. Dist.</u>, 777 F. Supp. 2d 577, 598 (S.D.N.Y. 2011) ("[The] plaintiffs' allegations of a pattern and practice through a failure to train or supervise its employees lack the requisite specificity. Dismissal of [the] plaintiffs' <u>Monell</u> claim is appropriate.").

Further, under the N.Y. Educ. Law § 1950(5)(e), the District Superintendent of BOCES is the executive officer of the Board, and "upon his recommendation," the Board is instructed to employ teachers and other professionals who provide services to the schools. <u>See</u> N.Y. Educ. Law § 1950 (McKinney) ("Upon the recommendation of the district superintendent [of BOCES], employ such administrative assistants, teachers, supervisors, clerical help and other personnel as may be necessary to carry out its program."); <u>see also</u> <u>McDonough v. Nassau Cnty. Bd. of Co-op. Educ. Servs.</u>, No. 05 CV 2507 (JG), 2007 WL 3124550, at *12 (E.D.N.Y. Oct. 25, 2007) ("Under the New York Education Law § 1950(5)(e), the District Superintendent of BOCES is the executive officer of the Board, and 'upon his recommendation' the Board is instructed to employ teachers and other professionals who provide services to the schools."); <u>Bochman v. Town of Cheektowaga</u>, 2 Misc. 3d 966, 968, 773 N.Y.S.2d 840, 843 (Sup. Ct. 2004) ("BOCES . . . is responsible for monitoring their instructional techniques, evaluating their job performance and enforcing established procedures."). Thus, as the Defendant correctly points out, under N.Y. Educ. Law § 1950(5)(e), the District Superintendent of BOCES and the Board of BOCES, not officials from the District, have authority over the employment and training of teachers employed at schools, such as Jefferson, within BOCES.

The Plaintiffs contend that the language of the N.Y. Educ. § 1950 is not admissible at this motion to dismiss stage. The Plaintiffs are correct that as a general matter, courts in ruling on a motion to dismiss should only consider "a complaint" and "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." <u>Rothman v. Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000). However, courts may consider "matters of which judicial notice may be taken," such as legislative facts, like the N.Y. Educ. Law § 1950, and adjudicative facts, such as publicly filed decisions of this and other courts. <u>See</u> <u>Blue Tree Hotels</u>

17

Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) ("But we may also look to public records [in deciding motions to dismiss], including complaints filed in state court, in deciding a motion to dismiss."); Ass'n of Home Appliance Manufacturers v. City of New York, 36 F. Supp. 3d 366, 371 (S.D.N.Y. 2014) ("Judicial notice may be taken of material that is a matter of public record, . . . , such as legislative history."). Accordingly, contrary to what the Plaintiffs contend, the Court's consideration of N.Y. Educ. Law § 1950(5)(e) is plainly proper.

Therefore, based on the vague allegations in the complaint and N.Y. Educ. Law § 1950, the District cannot plausibly be held liable for the alleged violations of the Plaintiffs' Fourth and Fourteenth Amendment rights based on allegations of inadequate training. See Connick v. Thompson, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); Charles v. Mount Pleasant Police, No. 7:11-CV-2641(VB), 2011 WL 3251503, at *3 (S.D.N.Y. July 26, 2011) ("Here, there are no allegations to support a Monell claim. Plaintiff has neither identified nor proffered any evidence of a specific municipal policy or custom that caused her injuries. Further, plaintiff has not made any allegations of a pattern and practice through a failure to train or supervise its employees.").

Further, the complaint alleges that the District can held liable under Monell and its progeny based on a "theory of deliberate indifference."  In particular, the complaint alleges that "[Sachem] [was] deliberately indifferent to the demonstrated propensity of their agents to violate the constitutional rights of citizens in the manner that Plaintiffs' rights were violated."  (Compl. at ¶ 69(b)).

'"[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 131 S. Ct. at 1360, 179 L. Ed. 2d 417 (quoting Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

Here, other than Tuttle and Dr. Hartman, the complaint does not allege that any employees of the District were involved in or aware of the alleged assaults against J.L. committed by Golik, a teacher at Jefferson, and by unidentified students at Islip after J.L. transferred from Jefferson to Islip. With respect to Tuttle and Dr. Hartman, the complaint alleges that after O'Flaherty brought the May 15, 2013 assault to the attention of Tuttle and Dr. Hartman, the two had a call with O'Flaherty during which Dr. Hartman suggested that the District CSE hold an emergency meeting to discuss transferring J.L. to another school. (Compl. at ¶ 32.) However, O'Flaherty refused the offer by Dr. Hartman because she did not want J.L. transferred to another school with one month left in the school year. (Id.)

These allegations may suggest that Tuttle and Dr. Hartman were responsive to the alleged violations of the Plaintiffs' constitutional rights, not deliberately indifferent as the Plaintiff contends. Thus, the complaint falls well short of what is required to sufficiently allege deliberate indifference to the Plaintiffs' constitutional rights on the part of the District. See T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist., No. 11 CV 5133 (VB), 2012 WL 5992748, at *3 (S.D.N.Y. Nov. 27, 2012) ("Similarly, although the complaint alleges [the] defendants took no action in response to Blondel Patterson's complaints about plaintiff's physical examination, there are no allegations the School District was aware of or ignored other misconduct. [The] [p]laintiff has alleged a single incident involving actors below the policymaking level and the sheer possibility that other misconduct could have occurred. That is not enough.").

As the complaint fails to allege that the District had an official municipal policy that caused the Plaintiffs' alleged constitutional injuries, the Court grants the District's motion to dismiss the 42 U.S.C. § 1983 claim against it.

**2. As to the §§ 1985 and 1986 Claims**

The complaint asserts that "the Defendants also conspired to conceal the facts of this case from Plaintiffs and neglected to prevent future violations, in violation of 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986." (Compl. at § 70.)

"To state a cause of action under § 1985(3) a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999); see also Cancel v. Home Depot U.S.A. Inc., No. 10-CV-0846 (RRM) (LB), 2011 WL 3794152, at *4 (E.D.N.Y. Aug. 24, 2011) (same). In addition, a § 1985(3) "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007) (quoting Roach, 165 F.3d at 146).

In turn, 42 U.S.C. § 1986, imposes liability on an individual who has knowledge of discrimination prohibited under § 1985. Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996). The Second Circuit has repeatedly held that a § 1986 claim is contingent upon a valid § 1985 claim. See Wang v. Miller, 356 F. App'x 516, 517 (2d Cir. 2009) ("Because § 1986 claims are contingent upon a valid § 1985 claim, the District Court was also correct in dismissing Wang's § 1986 claim.").

The District asserts that the § 1985 claim fails because the complaint fails to allege the existence of a conspiracy; a racial animus that motivated an alleged conspiracy; or any facts that would connect the District's alleged acts to the injuries suffered by J.L. and O'Flaherty. (The Dist. Mem. of Law at 8–10.)

The Plaintiff responds that there is a "reasonable inference that on at least two occasions, various supervisory defendants conspired to conceal" from O'Flaherty the assaults allegedly committed by Golik on J.L. (The Pls.' Opp'n Mem. of Law at 8.)

Here again, the Court agrees with the District. The only two Sachem employees mentioned in the complaint are Dr. Hartman and Tuttle. There are no allegations plausibly suggesting that they concealed information from O'Flaherty regarding the assaults, let alone conspired with any officials from BOCES in doing so. To the contrary, when O'Flaherty asked Tuttle for information regarding teacher certifications, Tuttle allegedly responded that the District did not have that information. The fact that the District did not have information regarding Golik and other teachers' training certificates cannot, without more, be read to suggest that the District was conspiring to withhold information from O'Flaherty.

Moreover, even if such facts could be read to suggest a conspiracy, there are no allegations that the conspiracy was motived by racial or class based invidious discriminatory animus, which is a pre-requisite to maintaining a § 1985 claim. See, e.g., Cine SK8, Inc., 507 F.3d at 791 ("A § 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.") (internal quotation marks and citations omitted); Pecou v. Forensic Comm. Pers., No. 06 CV 3714 (SJF)(LB), 2010 WL 2787588, at *5 (E.D.N.Y. May 14, 2010) report and recommendation adopted, No. 06 CV 3714(SJF)(LB), 2010 WL 2787587 (E.D.N.Y. July 9, 2010) ("[The]

[p]laintiff's complaint fails to set forth any facts establishing a conspiracy based on any racial or class based invidious discriminatory animus and therefore, [the] defendants' motion to dismiss plaintiff's §§ 1985, 1986 claims should be granted."); Dowlah v. Dowlah, No. 09-CV-2020 SLT/LB, 2010 WL 889292, at *8 (E.D.N.Y. Mar. 10, 2010) ("Here, Plaintiff fails to allege any factual support to establish that either Defendant was motivated by 'racial or . . . otherwise class-based' discriminatory animus. For these reasons, Plaintiff's § 1985 claims against defendants Berrill and Gerner are hereby dismissed.").

Accordingly, the Court grants the District's motion to dismiss the Plaintiffs' § 1985 claim against it. As the complaint fails state a valid § 1985 claim against the District, the § 1986 claim is also dismissed. See White v. St. Joseph's Hosp., 369 F. App'x 225, 226 (2d Cir. 2010) ("Insofar as she sought to state a claim under 42 U.S.C. § 1986, this claim necessarily failed because she failed to state a claim under § 1985.").

In sum, the Court grants the District's motion to dismiss the federal claims against it. The Court will now turn to the Plaintiffs' state law claims.

## C. As to the Plaintiffs' State Law Claims

As noted above, the Plaintiffs asserts five additional state law claims against the District for: (i) violation of N.Y. Educ. Law § 10, *et seq.*; (ii) assault; (iii) intentional infliction of emotional distress; (iv) negligence; and (v) negligent infliction of emotional distress.

The Court notes even though the assault claim arises from the action of Golik, the Plaintiffs appear to assert that the District is also liable based on a *respondeat superior* theory. (Compl. at ¶ 14.)

The District urges the Court to decline exercising supplemental jurisdiction over the Plaintiffs' state law claims because the Court has dismissed the federal claims against it. (The Dist. Mem. of Law at 14–15.)

The Plaintiffs respond that supplemental jurisdiction is appropriate because the state law claims against the District arise from the same case or controversy as the federal law claims still pending in this case against BOCES and the other Defendants. (The Pls. Mem. of Law at 14.) The Court agrees.

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . ." 28 U.S.C.A. § 1367(a).

"For purposes of section 1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) (quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004)).

Here, there is no question that the state law claims against the District arise from a common nucleus of operative fact in that both the state and federal claims rely principally on the same allegations — namely, that Golik and students at Islip committed assaults against J.L., and the District, BOCES, Matera, and Rauber failed to respond appropriately when notified of the incidents.

Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." Id. (quoting Itar–Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998)).

Subsection 1367(c), in turn, provides

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In addition, the Second Circuit has held that "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values [of] . . . economy, convenience, fairness, and comity." Jones v. Ford Motor Credit Co., 358 F.3d 205, 214 (2d Cir. 2004) (citation omitted).

The Defendant is correct that courts in this Circuit routinely decline to exercise supplemental jurisdiction over state law claims where they have dismissed all of the federal law claims in the action. See Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004) ("Applying these factors, our Court has held, as a general proposition, that 'if [all] federal claims are dismissed before trial . . . , the state claims should be dismissed as well.'") (quoting Castellano v. Bd. of Trustees, 937 F.2d 752, 758 (2d Cir. 1991)).

However, that is not the case here. As noted above, the federal law claims against BOCES and the individual Defendants are still pending before this Court and are part of the same nucleus of operative facts as the remaining state law claims against the District. Under these circumstances, the Court sees no reason, nor does the District offer any, as to why the Court should decline to exercise supplemental jurisdiction over the remaining state law claims against the District under Subsection 1367(c) and the principles of economy, convenience, fairness, and comity. See Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) ("A state law claim forms part of the same controversy if it and the federal claim derive from a common nucleus of operative fact . . . . This is so even if the state law claim is asserted against a party different from the one named in the federal claim.") (internal quotation marks and citations omitted) (emphasis added).

As noted in Section II.B in its discussion of the District's liability for purposes of Section 1983, the Court views the allegations against the District to be somewhat sparse because the District did not control the hiring decisions or training requirements for teachers at Jefferson or Islip. However, the District does not make an argument that the Plaintiffs' state law claims against it should be dismissed on the merits and instead focuses its argument entirely on the issue of supplemental jurisdiction. As such, the Court does not reach the merits of the Plaintiffs' state law claims against the District and denies the District's motion to dismiss the Plaintiffs' state law claims against the District.

### III. CONCLUSION

Based on the foregoing reasons, the District's motion to dismiss is granted with respect to the federal claims against it and is denied with respect to the state law claims against it.

Based on this Order, (i) all six causes of action remain pending against BOCES, Matera, Rauber, Golik, and individually and Does 1-10; and (ii) the second to sixth causes of action remain pending against the District.

**SO ORDERED.**
Dated: Central Islip, New York
June 29, 2015

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge