UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
J.L., an infant under the age of sixteen (16)
years, and COLLEEN O'FLAHERTY for
herself and as Next Friend of J.L.,

                           Plaintiffs,

    -against-


EASTERN SUFFOLK BOCES; SACHEM
CENTRAL SCHOOL DISTRICT;
MATTHEW MATERA, individually and in
the capacity of Principal of Jefferson
Academic Center; HOLLY RAUBER,
individually and in the capacity of Assistant
Principal of Jefferson Academic Center;
ALEXANDER GOLIK, individually and in
the capacity of employee of Jefferson
Academic Center; and DOES 1-10,
individually and in their capacities of
employees of Jefferson Academic Center,
Sachem Central School District, and/or
Eastern Suffolk Boces,

                           Defendants.
-----------------------------------------------------------x

**MEMORANDUM AND
ORDER**
14-CV-4565 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this civil rights action are motions for summary

judgment submitted by Defendants Eastern Suffolk Boces ("Boces"), Matthew Matera

("Matera"), Holly Rauber ("Rauber"),[1] and Alexander Golik ("Golik") (collectively the

"Boces Defendants"), and Sachem School District ("Sachem" or the "School District")

(together "Defendants"), respectively. *See* Docket Entry ("DE") [43, 46]. By way of

Complaint filed July 30, 2014, Plaintiffs J.L. ("J.L." or the "Infant Plaintiff") and

---

[1] Defendant Rauber changed her last name to "Iuliucci" at some point after the commencement of the instant action. *See* Holly Rauber Deposition Transcript ("Rauber Tr.") DE [43-14]. For simplicity, the Court continues refers to Rauber without regard to the name change.

Colleen O'Flaherty ("O'Flaherty"), J.L.'s mother,[2] (collectively "Plaintiffs") bring this action alleging: (1) violations of the Fourth and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983; (2) conspiracy claims under 42 U.S.C. §§ 1985 and 1986; and (3) assorted state-law claims. *See* Complaint ("Compl."), DE [1].

On November 1, 2016, pursuant to 28 U.S.C. § 636(c), the parties filed an executed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, indicating their intention to have this Court "conduct all proceedings and order the entry of a final judgment," which Judge Feuerstein So Ordered. *See* DE [35, 37]. On September 7, 2017, Defendants filed their respective motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. *See* DE [43, 46]. Plaintiffs oppose the motions in part. *See* DE [44, 47]. For the reasons set forth herein, Sachem's motion is granted in its entirety and Boces' motion is granted in part and denied in part. Specifically, the Boces Defendants are entitled to summary judgment on Plaintiffs' 42 U.S.C. § 1983 and state-law negligent and intentional infliction of emotional distress and negligence claims. However, Boces' motion is denied as to Plaintiffs' state-law assault and battery cause of action as against Boces and Golik.

---

[2] In June 2016, O'Flaherty changed her last name to Lawson. *See* Colleen O'Flaherty Deposition Transcript ("O'Flaherty Tr."), DE [43-12], at 5:20-6:6; *see also* O'Flaherty 50-h Hearing Transcript ("O'Flaherty 50-h Tr."), DE [43-11], at 3:17-20, 12:3-18. For clarity, the Court will continue to refer to her as O'Flaherty.

# I.    RELEVANT FACTUAL BACKGROUND

The following facts are taken from the parties' pleadings, deposition transcripts, affidavits, exhibits and respective Rule 56.1 statements. Unless otherwise noted, these facts are not in dispute.

This action arises out of Defendant Golik's alleged assault against Plaintiff J.L. on May 15, 2013 at Jefferson Academic Center ("JAC"), and the purported retaliatory conduct that followed. *See generally* Compl.; *see also* Sachem's 56.1 Statement of Undisputed Facts ("Sachem 56.1 Stmt."), DE [43-3], ¶ 9; Plaintiffs' Counterstatement to Sachem's 56.1 Statement of Undisputed Facts ("Pls.' Sachem Counterstmt."), DE [43-5], ¶ 9.  From September 2010 until June 2013, J.L. was a student at JAC. *See* J.L. Deposition Transcript ("J.L. Tr."), DE [43-10], at 6:10-7:8.  JAC is a school for children with special needs located within the Defendant School District and operated by Defendant Boces. *See* Matera Deposition Transcript ("Matera Tr."), DE [43-13], at 8:20-9:8; *see also* Boces Defendants' 56.1 Statement of Undisputed Facts ("Boces 56.1 Stmt."), DE [43-6], ¶ 6; Plaintiffs' 56.1 Counterstatement to Boces Statement of Undisputed Facts ("Pls.' Boces Counterstmt."), DE [48], ¶ 6.  Boces is a public educational cooperative comprised of fifty-one school districts, of which Sachem is one. *See* Sachem's 56.1 Statement of Undisputed Facts ("Sachem 56.1 Stmt."), DE [46-15], ¶¶ 14-15.  The Individual Defendants Golik, Matera and Rauber are employees of Boces and, on the date of the incident, worked at JAC as a teacher's assistant, principal, and assistant principal, respectively. *See* Matera Tr. at 7:8-11; Golik Deposition Transcript ("Golik Tr."), DE [43-15], at 6:22-25; Rauber Tr. at 7:9-15.  As part of their employment, all JAC staff members are required to attend an

initial two-day training and an annual refresher course in Crisis Prevention Intervention ("CPI"), which includes, among other things, instruction on proper takedown techniques. *See* Matera Tr. at 14:6-25.

J.L. is autistic and has certain behavioral and emotional disabilities which result in severe anger issues.[3] *See* J.L. 50-h Hearing Transcript ("J.L. 50-h Tr."), DE [43-9], at 29:25-30:14. Because of his disabilities, the Infant Plaintiff is classified as a special needs student and has an Individual Education Program ("IEP") that, *inter alia*, documents his mental health condition.[4] J.L also suffers from spontaneous nosebleeds. *See* O'Flaherty 50-h Tr. at 76:20-22. During his time at JAC, the Infant Plaintiff repeatedly assaulted fellow students and staff members. *See, e.g.*, J.L. 50-h Tr. at 18:11-25. Because of these incidents, J.L. was repeatedly restrained and sent to the Behavioral Intervention Room ("BIR"), a short-term "time-out room" designed to calm down disruptive students, five to six times a week. *See* Rauber Tr. at 19:25-20:8. Pursuant to regulation, "time-out rooms" are required to have wall and floor coverings that are designed to prevent possible injury to students. *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.22(c).

---

[3] Specifically, J.L. has been diagnosed with pervasive developmental disorder, oppositional defiance disorder and attention deficit hyperactivity disorder. *See* O'Flaherty 50-h Tr. at 12:3-18.

[4] The Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* requires a school district to develop an IEP in conjunction with a child's parents. The IEP is a written document that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *K.H. v. New York City Dep't of Educ.*, No. 12-cv-1680, 2014 WL 3866430, at *1 (E.D.N.Y. Aug. 6, 2014) (quoting *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 598 (1988)).

A. <u>JAC Incident</u>

On May 15, 2013, J.L. was initially sent to the BIR for unspecified reasons, but after calming down was sent to an Alternative Learning Room ("ALR"). *See* J.L. 50-h Tr. at 40:4-25. ALRs are converted classrooms which are used for disruptive students; they are not "time-out rooms" and generally do not have wall or floor padding. *See* Rauber Tr. at 37:11-14; *see also* Matera Tr. at 33:18-21. When J.L. arrived at the ALR, he encountered Maria Falanga ("Falanga"), a Special Education aide, and Golik. *See* Falanga Deposition Transcript ("Falanga Tr."), DE [46-13], at 17:11-23; Golik Tr. at 23:4-24:24. Golik stands at five-feet four-inches tall and weighs approximately 200 pounds whereas J.L. is almost six-feet tall and weighs roughly the same.[5] *See* J.L. 50-h Tr. at 23:2-17, 56:25-57:5. After entering the room, the Infant Plaintiff sat behind a desk and put his coat over his head covering his entire upper body. *See* Golik Tr. at 23:4-24:24. According to Falanga, when she saw J.L. put his jacket over his head, she became concerned that she could not see what was happening underneath. *See* Falanga Tr. at 36:20-23.

What follows is subject to dispute. Falanga testified that she repeatedly told the Infant Plaintiff to take the jacket off his head and after he failed to do so she removed the jacket. *See id*. at 19:9-20:6. She further states that, in response, J.L. got out of his seat in a "threatening manner" and grabbed the jacket. *See id*. at 21:4-18. According to Falanga, the two wrestled for the jacket until J.L. raised his hand, made a fist, and cocked it back as if to throw a punch. *See id*. In contrast, J.L.

---

[5] The parties' pleadings, deposition transcripts, affidavits, exhibits and respective Rule 56.1 statements are silent as to Falanga's height and weight.

testified that—without warning—Falagna ripped the jacket off, and in response, he told her to "let go of the coat and there [would] be no problem" and balled his hand into a fist and cocked it back. *See* J.L. 50-h Tr. at 49:3-53:19. However, J.L. denies intending to throw a punch. *See id.* at 51:20-53:11.

At this point, Golik, who was standing approximately three feet away, grabbed the Infant Plaintiff and wrestled him to the ground. *See* Golik Tr. at 23:4-24:24. There is a discrepancy as to whether Golik "tackled" J.L. from behind or restrained him via a "bear hug" from the side. *Compare* J.L. 50-h Tr. at 55:6-9, *with* Golik Tr. at 23:4-24:24. According to J.L., the takedown caused him to land face-first on the unpadded floor and triggered a nosebleed. *See* J.L. Tr. at 160. 50-h at 51-60. After the alleged tackle, Golik remained on top of J.L. and held J.L.'s arms so he "could not punch anyone." *See* J.L. 50-h Tr. at 60:21-61:13. While on the ground J.L. began kicking and cursing at Golik, Falanga, and a new-to-the-scene third staff member. *See* Golik Tr. at 23:4-24:24; *see also* J.L. 50-h Tr. at 59:4-22. Rauber subsequently arrived at the ALR and found J.L. bleeding and continuing to struggle with staff. *See* Rauber Tr. at 24:18-24. Unable to calm the Infant Plaintiff, Rauber called O'Flaherty and told her that about the incident. *See id.* at 24:24-25-24. O'Flaherty alleges that Rauber told her that J.L. was having a bad day, was restrained, and suffered a spontaneous nosebleed, thereby misleading her about the true nature of the incident. *See* O'Flaherty Tr. at 62:7-64:8.

When J.L. arrived home that evening, O'Flaherty observed discoloration and redness on the Infant Plaintiff's nose and face. *See id.* at 70:13-22. That same

evening, Plaintiffs went to Brookhaven Hospital and were informed that J.L's nose was not broken or fractured. *See id.* at 74:11-75:7. J.L. graduated from JAC approximately a month after the May 15, 2013 incident. *See* J.L. 50-h Tr. at 87:22-25. In that period, Golik did not speak to or touch the Infant Plaintiff. *See id.* at 94:6-9. On June 13, 2013, Plaintiffs filed a Notice of Claim with the School District and Boces concerning the May 15, 2013 incident. *See* Notice of Claim, DE [46-2].

B. Alleged Retaliation

After graduating from JAC, J.L. began attending Islip Academic Center ("IAC"), a school dedicated to special education students and also operated by Boces, in September 2013. *See* Matera Tr. at 71:24-72:8; *see also* J.L. Tr. at 20:17-19. Approximately a month later, J.L. was assaulted by a fellow student, Hector Cruz ("Cruz"), outside of a classroom. *See* J.L. Tr. at 129:2-13. The incident began when the Infant Plaintiff started arguing with Cruz. *See id.* at 129:14-20. Fearing the argument might turn physical, J.L. fled out of the classroom and into the hallway. *See id.* at 131:22-132:2. However, Cruz followed and the two met in the hallway where Cruz punched the Infant Plaintiff seven times—three blows to the body and four to the face—thereby breaking his nose. *See id.* at 134:18-18. According to J.L., "[t]he incident happened very suddenly, very quickly," and immediately after the incident, four IAC staff members came over to provide medical attention. *See id.* at 133:10-17. Plaintiffs claim that an unnamed teacher failed to intervene during the fight in retaliation for J.L.'s May 15, 2013 incident with Golik and O'Flaherty's threat of a lawsuit. *See, e.g.*, O'Flaherty Tr. at 195:9-14. In November 2013, J.L. transferred to a different school district and stopped attending IAC. *See* J.L. Tr. at 156:17-157:5.

## II. Procedural History

Based on the events outlined above, Plaintiffs J.L. and O'Flaherty, individually and as guardian and next friend of J.L., commenced the instant action. *See* Compl. The Complaint asserts four claims pursuant to 42 U.S.C. § 1983 against: (1) Boces under a municipal liability theory for being "deliberately indifferent to the demonstrated propensity of their agents to violate constitutional rights of citizens in the manner that Plaintiffs' rights were violated;"(2) Golik and Boces for differential treatment of J.L. in violation of the Equal Protection Clause of the Fourteenth Amendment; (3) the Boces Defendants for violations of the Substantive Due Process Clause of the Fourteenth Amendment by "intentionally interfering in the parent child relationship" and infringing upon J.L.'s right to "personal security and bodily integrity; and (4) Golik for violating J.L.'s rights under the Fourth Amendment by "utilizing unjustified and unreasonable force." *Id.* at ¶¶ 64-69. Further, Plaintiffs assert claims pursuant to 42 U.S.C. §§ 1985(3) and 1986 against the Boces Defendants. *Id.* at ¶ 70.

Plaintiffs also allege five state-law claims for: (i) violation of N.Y. Educ. Law § 10, *et seq.*; (ii) assault and battery; (iii) intentional infliction of emotional distress; (iv) negligence; and (v) negligent infliction of emotional distress. *Id.* at ¶¶ 72-104. Finally, Plaintiffs assert that Boces and the School District are "jointly and severally liable" for all state-based claims under the doctrine of *respondeat superior*. *Id.* at ¶ 14. On October 2, 2014, Defendants Boces, Matera, Rauber, and Golik interposed an Answer. *See* DE [13].

In lieu of an answer, Sachem moved to dismiss and Judge Spatt, to whom the case was originally assigned, granted in part and denied in part the motion. *See* Opinion and Order dated June 29, 2015, DE [19]. Specifically, the motion was granted with respect to Plaintiffs' federal claims but denied as to the state-law claims. *See id.* In reaching his decision, Judge Spatt did not address the merits of Plaintiffs' state-law claims, but instead rejected the School District's sole argument in support of dismissal—that the court should decline to exercise supplemental jurisdiction. *See id.* On July 20, 2015, Sachem interposed an Answer. *See* DE [20].

On October 17, 2016, the case was reassigned to Judge Feuerstein. *See* Electronic Order dated October 17, 2016. Approximately a month later, pursuant to 28 U.S.C. § 636(c), the parties filed an executed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, indicating their intention to have this Court "conduct any and all proceedings and enter a final order," which Judge Feuerstein So Ordered on November 2, 2016. *See* DE [35, 37]. Now, Sachem and the Boces Defendants move for summary judgment. Plaintiffs oppose but withdraw their 42 U.S.C. §§ 1985(3) and 1986 and N.Y. Education Law claims. *See* DE [44, 47].

## III.  LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Under Rule 56, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Rule 56(c) deems a fact "material" when its resolution "might affect the outcome of the suit under the governing law." *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247,

257–58 (E.D.N.Y. 2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). The evidence alleged to substantiate a "genuine issue" must be "such that a reasonable jury could return a verdict for the nonmoving party" based on that evidence. *Id.* "The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir. 1989)).

If the moving party meets its burden, then it is incumbent upon the nonmoving party to put forth in its opposition "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ.P. 56(e)). Such a showing must be specified and articulated and must provide more than a "metaphysical doubt" that the moving party's evidence warrants judgment in its favor. *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356; *see Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted) (holding summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case.").

## IV. DISCUSSION

Applying the standards outlined above, and for the reasons set forth herein, Sachem's motion is granted and the Boces Defendants' motion is granted in part and denied in part. The Court considers each motion in turn.

A. <u>Sachem Motion</u>

Plaintiffs fail to raise a material issue of fact as to whether the School District is liable for the alleged tortious conduct of Boces employees. As set forth above, Plaintiffs seek to hold the School District liable for all state-law claims under the doctrine of *respondeat superior*. Under this doctrine, an employer is vicariously liable for injuries resulting from the tortious conduct of employees acting within the scope of their employment. *Krynski v. Chase*, 707 F. Supp. 2d 318, 329 (E.D.N.Y. 2009) (internal citations omitted). A party may also be held liable for the conduct of an independent contractor, if due to the "degree of control exercised by the purported employer," the contractor is deemed to be the party's employee as a matter of law. *McCann v. Varrick Grp., LLC*, 84 A.D.3d 591, 591 (1st Dep't 2011) (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 695 (2003)).

Relevant here, a school's duty to supervise a child is ordinarily "coextensive with and concomitant to its physical custody of and control over the child." *A.B. v. Staropoli*, 929 F. Supp. 2d 266, 289 (S.D.N.Y. 2013) (quoting *Pratt v. Robinson*, 39 N.Y.2d 554, 560, 384 N.Y.S.2d 749, 752 (1976)). That custody ceases when the student has passed out of a school's "orbit of authority." *Begley v. City of New York*, 111 A.D.3d 5, 26, 972 N.Y.S.2d 48, 65 (2d Dep't 2013). Significantly, "[a]lthough a school has a statutory duty to provide special education services to children who require them, where the school has appropriately 'contracted-out' that duty, it cannot be held liable on a theory that the children were in [the school's] physical custody at the time of injury." *Ferraro v. N. Babylon Union Free Sch. Dist.*, 69 A.D.3d 559, 560, 892 N.Y.S.2d 507 (2d Dep't 2010) (internal citations omitted).

Applying these standards, Plaintiffs are unable to defeat summary judgment. The state-law claims are predicated entirely upon the alleged actions of Boces personnel, and it is undisputed that these individuals are not Sachem employees. Ordinarily this would end the inquiry, but Plaintiffs argue that an employment relationship existed between the School District and Boces due solely to Sachem's nondelegable statutory duty to formulate and enforce J.L.'s IEP. This argument misses the mark. Specifically, the School District has discharged its duty to implement and enforce the IEP by contracting-out a special education program to Boces. As a result, at the time of the May 15, 2013 incident, J.L. had passed out of the School District's orbit of authority. Therefore, without more, Plaintiffs are unable to invoke the doctrine of *respondeat superior* as against Sachem. *See Begley*, 111 A.D.3d at 26, 972 N.Y.S.2d at 64. Accordingly, Sachem is entitled to summary judgment on Plaintiffs' state-law claims as a matter of law. [6]

B. Boces Motion

Turning to the Boces Defendants, the Court concludes that they are entitled to summary judgment on Plaintiffs' 42 U.S.C. § 1983 and state-law negligent and

---

[6] The Court also notes that Plaintiffs are unable to rely on the subsequent IAC incident to support their state-law claims due to their failure to comply with the relevant notice of claim requirements as a condition precedent to suit. N.Y. Education Law § 3813 requires a claimant to file a notice of claim to afford a school district an opportunity to investigate a claim against it. *See Rure Assocs., Inc. v. DiNardi Const. Corp.*, 917 F.2d 1332, 1334–35 (2d Cir. 1990) (citing *Board of Education of Enlarged Ogdensburg City School District v. Wager Construction Corp.*, 37 N.Y.2d 283, 290, 372 N.Y.S.2d 45, 49 (1975)). Section 3813 requires that such notice be filed by a claimant with the School District, "within three months after the accrual of such claim." *Id.* Here, Plaintiffs have failed to file a notice of claim as it relates to the IAC incident. Further, Plaintiffs have failed to establish a nexus between the Infant Plaintiff's infancy and their failure to timely file. *See Padgett v. City of New York*, 78 A.D.3d 949, 912 N.Y.S.2d 75 (2d Dep't 2010) (holding that a plaintiff must establish a connection between the infancy and the failure to timely file a notice of claim). Accordingly, Plaintiffs are precluded from relying on the IAC incident as a basis for their state-law claims for failure to comply with the applicable notice of claim requirements.

intentional infliction of emotional distress and negligence causes of action.  However, the Court finds sufficient questions of fact to warrant a trial as against Boces and Golik on Plaintiffs' assault and battery claim.

### 1.   *42 U.S.C. § 1983 Claims*

Plaintiffs have failed to raise a genuine issue of material fact as to their 42 U.S.C. § 1983 claims sufficient to defeat summary judgment.  Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate:  "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law."  *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983)).

Here, Plaintiffs assert four causes of action under Section 1983 alleging violations of:  (1) unspecified constitutional rights under a municipal liability theory for Boces's failure to train staff members on the use of force; (2) the Equal Protection Clause of the Fourteenth Amendment for Golik's differential treatment of the Infant Plaintiff; (3) the Due Process Clause of the Fourteenth Amendment for Golik, Rauber

and Matera's intentional interference with the parent-child relationship and for Golik's use of excessive force; and (2) the Fourth Amendment for Golik's use of excessive force.  The Court addresses each claim in succession.

### a. Municipal Liability Claim

Plaintiffs have failed to present evidence sufficient to support their municipal liability cause of action.  A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability.  *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where the entity itself commits a wrong; a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (internal quotation omitted).  To establish a claim for municipal liability, a plaintiff must demonstrate:  "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see Norton v. Town of Islip*, 97 F. Supp. 3d 241, 264 (E.D.N.Y. 2015), *reconsideration denied*, 12 CV 4463, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), *aff'd*, 16-490-CV, 2017 WL 440131 (2d Cir. Feb. 1, 2017) (citing *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2036; *Lamont v. City of New York*, 12-CV-2478, 2014 WL 4829328, at *7 (E.D.N.Y. Sept. 29, 2014)).

Further, "[a] school district may be held liable for inadequate training, supervision[,] or hiring where the failure to train, hire [,] or supervise amounts to deliberate indifference to the rights of those with whom municipal employees will

come into contact." *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 376

(S.D.N.Y. 2014) As described by the Supreme Court:

> [D]eliberate indifference is a stringent standard of fault,
> requiring proof that a municipal actor disregarded a known
> or obvious consequence of his action. Thus, when
> [municipal] policymakers are on actual or constructive
> notice that a particular omission in their training program
> causes [municipal] employees to violate citizens'
> constitutional rights, the [municipal entity] may be
> deemed deliberately indifferent if the policymakers choose
> to retain that program.

*Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360 (2011) (internal citations

omitted); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("We have

held that municipal inaction such as the persistent failure to discipline subordinates

who violate civil rights could give rise to an inference of an unlawful municipal policy

or ratification of unconstitutional conduct within the meaning of *Monell*."). As a

result, "[a] pattern of similar constitutional violations by untrained employees is

ordinarily necessary to demonstrate deliberate indifference for purposes of failure to

train." *Connick*, 563 U.S. at 62, 131 S. Ct. at 1360. Moreover, where a municipal

entity has a training program, a plaintiff must identify a specific deficiency in the

program that is "closely related to the ultimate injury, such that it 'actually caused'

the constitutional deprivation." *Wray v. City of New York*, 490 F.3d 189, 196

(2d Cir. 2007) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129

(2d Cir.2004)).

Applying these standards, Plaintiffs have failed to present sufficient evidence

as to allow a reasonable jury to conclude that Boces is liable under Section 1983.

Plaintiffs allege that Boces was deliberately indifferent to the need for additional use

of force training. *See* Plaintiffs' Opposition to Defendants' Summary Judgment Motions ("Pls.' Opp."), DE [44], at 11-13. However, the record is devoid of any prior similar constitutional violations. Therefore, Plaintiffs cannot plausibly allege that Boces acquired sufficient actual or constructive notice as to be deliberately indifferent as to the need for further training. *See Connick*, 563 U.S. at 62, 131 S. Ct. at 1360 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). Further, while Plaintiffs tender general inadequacies in the Boces's training program, such as additional instruction on the constitutional limitations of use of force, *see* Pls.'s Opp. at 13, these defects do not rise to the level of deliberate indifference.[7] *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391, 109 S. Ct. 1197, 1206 (1989) ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.").[8] Accordingly, Boces is entitled to summary judgment on Plaintiffs' Section 1983 municipal liability claims as a matter of law.[9]

---

[7] Further, to the extent that Plaintiffs assert that Matera's failure to impose post-incident measures constitutes an official policy, *see* Pls.' Opp, at 14, this argument falls short as it is well-established that "conduct occurring after the incident at issue lacks the requisite 'affirmative link' to plaintiffs' injuries—that is, plaintiffs cannot establish causation." *Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 481 (E.D.N.Y. 2016).

[8] The Court notes that Boces is a municipal entity acting under the color of state law as opposed to an arm of the state and thereby not entitled to Eleventh Amendment immunity. *See Gorton v. Gettel*, 554 F.3d 60, 62 (2d Cir. 2009) (holding that boards of cooperative educational service are considered municipal entities as opposed to arms of the state for the purposes of Eleventh Amendment immunity); *see also* Answer of Defendants Boces, Rauber, Matera, and Golk, DE [13], ¶ 11.

[9] As a corollary, the Court also dismisses Plaintiffs' claims seeking to hold the individually named Defendants liable in their official capacity as they are duplicative of the claim against BOCES. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

### b. Fourteenth Amendment: Equal Protection

The Court also concludes that Plaintiffs have failed to raise a genuine issue of material fact so to warrant a trial as to their equal protection claim as to the Boces Defendants. A plaintiff asserting a class-based equal protection claim under Section 1983 must allege that the discriminatory actions were intentional and based on his or her protected class. *See Brown v. City of Oneonta*, 221 F.3d 329 (2d Cir. 2000). Alternatively, a plaintiff may pursue an equal protection claim under a "class of one" theory. *See Vassallo v. Lando*, 591 F. Supp. 2d 172, 183 (E.D.N.Y. 2008). A class-of-one equal protection claim arises when an individual is "intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074 (2000)).

Plaintiffs have failed to submit evidence sufficient to warrant a trial under either theory of liability. Simply put, Plaintiffs fail to identify the existence of any similarly situated comparator, whether distinguished by membership in a protected class or on some other basis. Instead, Plaintiffs only make speculative allegations about potential animus insufficient to proceed under either theory. Accordingly, the Boces Defendants are entitled to summary judgment as a matter of law on Plaintiffs' equal protection claim.

### c. Substantive Due Process Claim

The Boces Defendants are similarly entitled to summary judgment on Plaintiffs' substantive due process cause of action. On this claim Plaintiffs seek to

hold Golik liable for his alleged use of excessive force and Rauber and Matera liable under a negligent supervision theory. However, both facets of their claim are fatally flawed.

Substantive due process "is the right to be free of arbitrary government action that infringes a protected right." *O'Connor v. Pierson*, 426 F.3d 187, 200 n.6 (2d Cir. 2005). To prevail on a substantive due process claim, a plaintiff must establish that the defendant infringed on a protected liberty interest in an arbitrary or irrational manner that shocks the conscience. *See Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) ("[A] plaintiff must demonstrate [ . . . ] that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"); *Burroughs v. Cty. of Nassau*, No. 13-cv-6784, 2014 WL 2587580, at *11 (E.D.N.Y. June 9, 2014). "The shock the conscience standard is not easily met; the plaintiff must show the government conduct was egregious and outrageous, not merely incorrect or ill-advised." *Ferran v. Town of Nassau*, 471 F.3d 363, 369-70 (2d Cir. 2006) (internal quotation marks omitted).

In the context of substantive due process, students have a protected liberty interest in the "right to be free from the use of excessive force." *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir.2001) (citing *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir.1995)). In determining whether the constitutional line has been crossed, factors to be considered include "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to

maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (internal citations omitted). "The malice or sadism must amount to an abuse of power literally shocking to the conscience." *Dockery v. Barnett*, 167 F. Supp. 2d 597, 603 (S.D.N.Y. 2001) (internal citation omitted).

Further, as to supervisory liability, "[i]t is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C.] § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). In *Colon v. Coughlin*, the Second Circuit held that the personal involvement of a supervisory defendant can be showed, among other ways, through "the failure to remedy a wrong after being informed through a report or appeal." 58 F.3d 865, 873 (2d Cir. 1995). The "failure to remedy" factor in turn depends on whether there is an ongoing constitutional violation. *See Hernandez v. Daniels*, No. 14-CV-5910, 2016 WL 4987155, at *3 (S.D.N.Y. Sept. 14, 2016) (holding that a supervisor does not become "personally involved" for purposes of supervisor liability unless the constitutional violation is ongoing). After *Coughlin*, however, the Supreme Court, in *Ashcroft v. Iqbal*, held that "a plaintiff must plead that each government official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009). Thus, "each government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

Since *Iqbal*, the Second Circuit has not weighed in on what, if anything, remains of *Colon*. *See Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("We have

not yet determined the contours of the supervisory liability test, including the gross negligence prong, after *Iqbal*."). However, several courts within this Circuit have concluded that *Iqbal* "active conduct" standard effectively nullified several of *Colon's* supervisory liability classifications. *See Drew v. City of New York*, No. 16-cv-594, 2016 WL 4533660, at *11 (S.D.N.Y. Aug. 29, 2016) (collecting cases). In any event, the Court need not resolve this uncertainty as Plaintiffs fail to satisfy both *Iqbal's* "active conduct" standard and *Colon's* "failure to remedy" factor. *See id.*

Here, Plaintiffs allege that Matera and Rauber were informed of Golik's purported violation of J.L.'s constitutional rights and did not nothing to "remedy the wrong." However, Plaintiffs have failed to submit evidence of Matera's and Rauber's personal involvement in the incident or the existence of an ongoing constitutional violation. Instead, at most, it appears that Plaintiffs seek to hold Matera and Rauber liable under their supervisory authority for a solitary event, which is insufficient to establish supervisory liability under *Colon* or *Iqbal* as a matter of law.

Plaintiffs have also failed to submit evidence that the force used by Golik was so egregious and outrageous that it shocked the conscience as to establish a substantive due process violation. Initially, there was an apparent need for the use of force as, even according to the Plaintiffs' evidence, immediately prior to Golik's intervention, J.L. threatened Falanga and balled his hand into a fist. *See* J.L. 50-h Tr. at 49:3-53:19. Moreover, the extent of J.L.'s physical injuries are relatively limited as he did not suffer any broken or fractured bones. In addition, it is uncontested that Golik's use of force was an effort to restore discipline within the

ALR. Finally, Plaintiffs have failed to present any evidence that plausibly demonstrates that Golik's actions were done sadistically or maliciously. Instead, at most Plaintiffs argue that Golik's tackle was disproportionate to the force needed, which does not rise to the level of conscience-shocking behavior as a matter of law. *Compare Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (finding that "[s]triking a student without any pedagogical or disciplinary justification" was not conscience-shocking behavior), *with Johnson*, 239 F.3d at 249-52 (finding a teacher's violent assault of an eighth grade student, including chocking the student, punching him in the face, and ramming the student's head into bleachers and against a metal fuse box, to be conscience-shocking behavior). Accordingly, the Court grants the Boces Defendants' summary judgment as to Plaintiffs' substantive due process claim.

### d. *Fourth Amendment: Excessive Force*

Finally, with respect to Plaintiffs' Section 1983 claims, the Court concludes that the excessive force cause of action under the Fourth Amendment is similarly untenable. Initially, the Court recognizes that in the non-seizure, non-prisoner context, an excessive force claim should be analyzed under the Fourteenth Amendment. *See Rodriguez*, 66 F.3d at 477; *see also Medeiros v. O'Connell*, 150 F.3d 164 (2d Cir. 1998). However, if the alleged excessive force arises in the context of an alleged unlawful search or seizure a Fourth Amendment analysis is appropriate. *See, e.g., Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989). To that end, although the parties fail to address the issue altogether, the Court construes Plaintiffs' allegations regarding J.L.'s post-takedown restraint as a purported

"seizure" under the Fourth Amendment, and for the reasons set forth below, this claim ultimately falls short.

The Fourth Amendment, which in pertinent part prohibits the government from conducting unreasonable searches and seizures, applies to public school students. *See EC ex rel. RC v. Cty. of Suffolk*, 882 F. Supp. 2d 323, 344-45 (E.D.N.Y. 2012), *aff'd sub nom. E.C. ex rel. R.C. v. Cty. of Suffolk*, 514 F. App'x 28 (2d Cir. 2013) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 333, 105 S. Ct. 733, 738 (1985)). In this context, a seizure ordinarily occurs "only when a reasonable person would feel restrained by physical force or a show of authority." *Gardiner v. Inc. Vill. of Endicott*, 50 F.3d 151, 155 (2d Cir. 1995). However, considering the relative limited mobility of students, some courts have imposed a higher standard that asks whether the infringement "on the student's freedom of movement . . . significantly exceed[s] that inherent in everyday, compulsory attendance." *Guan N. v. NYC Dep't of Educ.*, No. 11-cv-4299, 2014 WL 1275487, at *19 (S.D.N.Y. Mar. 24, 2014) (internal citation omitted).

To that end, the reasonableness of a school's actions must be examined "in light of the special relationship between teachers and students." *Wallace v. Batavia Sch. Dist.*, 68 F.3d 1010, 1012 (7th Cir.1995) (citing *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir.1995)). "Thus, while school officials are subject to the limitations of the fourth amendment, the reasonableness of seizures must be determined considering all of the circumstances, with particular attention being paid to whether the seizure was justified at its inception and reasonable in scope." *Hassan*,

55 F.3d at 1079 (citing *Edwards ex rel. Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989)) (holding that the legality of a student search depends on its reasonableness considering the circumstances). Ultimately, there can be no violation where the seizure of a student is "reasonable under the circumstances then existing and apparent." *Mislin v. City of Tonawanda Sch. Dist.*, No. 02-cv-273S, 2007 WL 952048, at *8 (W.D.N.Y. Mar. 29, 2007) (citing *Wallace v. Batavia Sch. Dist.*, 68 F.3d 1010, 1012-15 (7th Cir.1995)).

As to the use of force, it generally violates the Fourth Amendment if it is "objectively unreasonable in light of the facts and circumstances." *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989)). The reasonableness of the level of force used should be judged from an on-scene perspective—and not the 20/20 vision of hindsight—paying careful attention to the facts and circumstances of each case. *Saucier v. Katz*, 533 U.S. 194, 205, 121 S. Ct. 2151, 2158 (2001). "In addition, many courts have accepted the common-sense notion that in considering whether force is excessive, one other factor to consider is the severity of any injuries that the plaintiff has sustained. *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 406 (E.D.N.Y. 2011) (citing *Evans v. Solomon*, 681 F. Supp. 2d 233, 252 (E.D.N.Y. 2010)).

Here, Plaintiffs' Fourth Amendment excessive force claim fails as a matter of law. Initially, the Court notes that there can be no dispute that J.L. was seized as within the meaning of the Fourth Amendment. Specifically, after the alleged tackle, Golik remained on top of J.L. and held J.L.'s arms so he "could not punch anyone,"

thereby restricting his movement. *See* J.L. 50-h Tr. at 60:21-61:13. However, it is also beyond dispute that the seizure was justified at its inception and reasonable in scope. Significantly, Plaintiffs concede that immediately prior to the restraint, J.L. threatened a staff member and balled his hand into a fist. *See* J.L. 50-h Tr. at 49:3-53:19. Further, during the seizure, J.L.'s only sustained a nosebleed, which is an injury he suffers spontaneously. *See* O'Flaherty 50-h Tr. at 76:20-22. Therefore, considering the fast-moving and potentially dangerous situation, and conceding Plaintiffs' version of events, the force used to restrain J.L. was objectively reasonable. Accordingly, the Court concludes that the evidence establishes that Golik is entitled to summary judgment as to Plaintiffs' Fourth Amendment excessive force claim.[10]

### 2. *State-Law Claims*

Having dismissed the federal claims, the Court exercises supplemental jurisdiction over Plaintiffs' remaining state-law causes of action. Supplemental jurisdiction over Plaintiff's state-law claims is governed by 28 U.S.C. § 1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . " 28 U.S.C. § 1367(a). "When a district court dismisses . . . all claims over which it properly has original subject–matter jurisdiction, the district court may still, under 28 U.S.C. § 1367(c), exercise its

---

[10] Because the Court finds that the Boces Defendants are entitled to summary judgment on the merits of Plaintiffs' federal claims, it does not address the argument that the Individual Defendants are entitled to qualified immunity.

discretion to retain supplemental jurisdiction over related state–law claims." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017). "In providing that a district court 'may' decline to exercise such jurisdiction, this subsection is permissive rather than mandatory." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). When such circumstances arise prior to the commencement of trial, Second Circuit precedent consistently recognizes that "the balance of factors to be considered" includes "judicial economy, convenience, fairness and comity." *Id.* Further, the Second Circuit has recognized that "where the dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking [the state law claims] down with a belated rejection of supplemental jurisdiction may not be fair.'" *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994).

Here, the balance of factors weighs in favor of exercising supplemental jurisdiction. The instant action is in its latter stages and the parties have completed discovery. Further, the Court is uniquely familiar with the instant action's four-year litigation history and there does not appear to be any novel state-law issues presented. As a result, judicial economy, convenience and fairness to litigants all weigh in favor of the Court exercising supplemental jurisdiction. Accordingly, the Court considers Plaintiffs' state-law claims on the merits.

### a. Negligent and Intentional Infliction of Emotional Distress

Plaintiffs have failed to submit evidence sufficient raise a genuine issue of material fact as to their negligent and intentional infliction of emotional distress

claims and defeat summary judgment. "Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *See Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). A viable claim for negligent infliction of emotional distress can be achieved in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty' theory." *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 730 (S.D.N.Y. 2017) (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)). Here, Plaintiffs invoke the latter. Under the "direct duty" theory, "a plaintiff suffers emotional distress caused by [a] defendant's breach of a duty which unreasonably endangered [the plaintiff's] own physical safety." *Id.* (citation and internal quotation marks omitted).

Both negligent and intentional infliction of emotional distress claims require that a plaintiff allege that the defendant's conduct is so "extreme and outrageous [ . . . that it] transcends the bounds of decency so as to be regarded as atrocious and intolerable in a civilized society." *Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 47 (2d Cir. 2016) (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014)). Further, negligent and intentional infliction of emotional distress are "highly disfavored [torts] under New York law," and they are "to be invoked only as a last resort." *Turley*, 774 F.3d at 158 (internal citations omitted). To that end, these causes of action "may be invoked only . . . to provide relief in those

circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citations omitted)).

Here, Plaintiffs' emotional distress claims are untenable for two reasons. Initially, the record is devoid of any evidence of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." At most, Plaintiffs allege a relatively ordinary assault claim. Moreover, Plaintiffs' negligent and intentional infliction of emotional distress causes of action are duplicative of their assault, battery and negligence claims. *See, e.g.*, *Caravalho v. City of New York*, No. 13-cv-4174, 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) (dismissing as duplicative negligent infliction of emotional distress claim because "the conduct at issue—[the defendant's] allegedly unreasonable use of force—and any resulting emotional damage is entirely subsumed by [the plaintiff's] common law assault and battery claim and his federal excessive force claim). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' negligent and intentional infliction of emotional distress claims.

### b. *Negligence*

Similarly, Defendants are entitled to summary judgment on Plaintiff's negligence cause of action. To establish a claim of negligence, a plaintiff must demonstrate each of following elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Genao v. Bd. of Educ. of City of New York*, 888 F. Supp. 501, 505 (S.D.N.Y. 1995). It is well-settled that once intentional offensive conduct has been established, the actor is liable for assault and not negligence. *See, e.g.*, *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d

351, 353 (2d Cir. 1993) (discussing the mutual exclusivity of negligence and battery under New York law).

Here, Plaintiffs argue against summary judgment on the basis that: (i) Boces breached various subsections of N.Y. Comp. Codes R. & Regs. tit. 8, § 200.22, which concern the use of time out rooms; and (ii) Golik's use of force was "inappropriate and unreasonable." Both arguments fall short. It is undisputed that the May 15, 2013 incident did not occur in a "time out" room, but instead transpired in an ALR. Thus, NYCCR § 200.22, and the purported standard of care that it establishes, are not applicable. Further, because Golik's actions were intentional and deliberate, they are outside the ambit of a negligence claim. Accordingly, the Boces Defendants are entitled to summary judgment on Plaintiffs' negligence cause of action.

### c. *Assault and Battery*

Conversely, material issues of fact exist as to Plaintiffs' assault and battery claim sufficient to defeat summary judgment. "An 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact," and "[a] 'battery' is an intentional wrongful physical contact with another person without consent." *United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). Self-defense and defense of another are affirmative defenses to assault and battery. *See Sachs v. Musa*, No. 10-cv-1663, 2014 WL 1855615, at *2 (S.D.N.Y. May 8, 2014), *aff'd sub nom. Sachs v. Cantwell*, 667 F. App'x 1 (2d Cir. 2016). (citing *Killon v. Parrotta*, 98 A.D.3d 828, 829, 950 N.Y.S.2d 525, 526 (3d Dep't 2012) and RESTATEMENT (SECOND) OF TORTS §§ 63, 67, 76). To prove an assault or battery was undertaken in self-defense or defense of another, a defendant must establish that (1)

28

she is not the initial aggressor, (2) she reasonably believed that the plaintiff was attacking or about to attack her or someone else, and (3) the force used to defend herself or someone else was reasonable under the circumstances. *Id.* Further, as set forth above, "[u]nder the doctrine of *respondeat superior*, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." *Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 447 (E.D.N.Y. 2009) (internal quotation omitted).

Here, while it is undisputed that Golik was not the initial aggressor, there is a question of fact as to whether Golik reasonably believed J.L. was about to attack Falanga and if the force used was ultimately reasonable. Specifically, when viewed in a light most favorable to Plaintiffs, questions of fact about what Golik believed and the type and amount of force used—a sudden football-style tackle from behind versus a bear hug from the side and an ensuing struggle to the floor—preclude summary judgment. Further, as the parties fail to address whether Boces is vicariously liable for Golik's action altogether on Plaintiffs' state-law claims, the Court does not reach the issue. Accordingly, Plaintiffs have established material issues of fact sufficient to deny summary judgment and allow Plaintiffs' assault and battery claim to proceed to trial against Defendants Boces and Golik. Finally, the Court notes that Plaintiffs' assault and battery claim appears to seek liability solely against Golik and Boces but not Rauber or Matera. Consequently, they, along with the School District, are to be removed from the caption as Defendants in this case.

## V.   CONCLUSION

For the reasons set forth herein, Sachem's motion is granted and the Boces Defendants' motion for summary judgment is granted in part and denied in part. Specifically, the Boces Defendants are entitled to summary judgment on Plaintiffs' 42 U.S.C. § 1983 and state-law negligent and intentional infliction of emotional distress and negligence claims.  However, the Boces Defendants' motion is denied as to Plaintiffs' state-law assault and battery cause of action.  The caption is amended to include only Golik and Boces as Defendants.

Dated:     Central Islip, New York
           April 19, 2018


                              s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge